IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  04-cv-02143-PSF-PAC

UNITED STATES OF AMERICA,

      Plaintiff(s),

v.

$20,330.00 IN UNITED STATES CURRENCY,

      Defendant(s).

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Patricia A. Coan, United States Magistrate Judge

This is a civil forfeiture action under 21 U.S.C. §881.  The Government filed its Verified Complaint for Forfeiture In Rem on October 15, 2004.  Claimant Claudio Baca filed a self-verified claim to the defendant currency on December 27, 2004 stating that the money belongs to him and that it was acquired through legal means.  Claimant thereafter filed an Answer to the Government's Verified Complaint.  The case was referred to the undersigned on October 19, 2004 and May 2, 2005 for pretrial management and to issue rulings for recommendations on dispositive motions.

The matter before the court at this time is Claimant Baca's "Motion for Summary Judgement or in Alternative Show Cause for Judgement" [Doc. #61] [filed October 17, 2005]."  The United States filed a Response in Opposition on November 14, 2005.  Claimant did not file a Reply.  The motion is ripe for disposition.

I.

The Government claims that the defendant currency is subject to forfeiture under 21 U.S.C. §881(a)(6) because the currency was furnished in exchange for a controlled substance, or was intended to be used to facilitate the sale of a controlled substance.

The forfeiture statute provides: "All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter" shall be subject to forfeiture to the United States.  21 U.S.C. §881(a)(6).

The Government's Verified Complaint, at ¶¶4-12, sets forth the specific facts underlying the Government's forfeiture claim.  Police officers received an anonymous tip in September 2002 that Claimant was selling drugs in the area of Mesa State College in Grand Junction, Colorado.  On May 23, 2003, police executed a search warrant at the home of Jerry Morgan, an individual known to police as Baca's close associate and a possible methamphetamine dealer. Officers recovered distribution quantities of methamphetamine from Morgan's home.  On June 20, 2003, officers received an anonymous tip that Baca had delivered drugs to Morgan's home the week before and that Baca had gone to Arizona with over $10,000 and returned to Colorado with "a load of drugs."  (Verified Compl., ¶5)  That same day, a confidential informant told officers that persons known as "Rusty" and "Vogt" were selling methamphetamine from an apartment in Grand Junction and that Baca was Vogt's supplier.

2

On July 23, 2003, law enforcement officers stopped Claimant for driving while drinking.  After signaling Claimant to pull over, officers observed the passenger, Joe Vallejos, lean back as if he were attempting to place something in his pant pocket before the vehicle came to a complete stop.  Claimant was arrested for driving with a suspended license.  Officers obtained consent from Vallejos to search his person and found $8,000 of the defendant currency in Vallejos' front pant pocket.  Vallejos told the officers that he saved the money from doing odd jobs, but that he was unemployed at that time.  Claimant stated that the money did not belong to him.  A drug detection dog sniffed the presence of controlled substances on the defendant currency and in various locations of the vehicle. Officers also found a small amount of marijuana on the floor board behind the front passenger seat.

On August 12, 2003, law enforcement officers observed Baca leave the motel where he and his girlfriend, Henrietta Saindon, were staying and drive to another motel.  A short time later, officers followed Saindon, who was driving Baca's car, to a storage unit. Saindon went into the storage unit for approximately fifteen minutes and came out carrying a blue bag.  Saindon drove off and was stopped a short time later for traffic violations.  Officers found $11,240.00 of the defendant currency in the blue bag after Saindon consented to a search.  A drug detection dog sniffed the presence of controlled substances on the blue bag and the outside of the storage unit.  Saindon's initial explanation for where she had obtained the money was disproved by investigating officers. Saindon later told law enforcement officers that some of the money belonged to Baca.

Officers secured a search warrant for the storage unit rented to Saindon and found the remaining $1,090.00 of the defendant currency inside the pocket of a jacket. Officers also found men's and women's clothing, paperwork in Baca's and Saindon's names, and they recovered marijuana cigarettes from a tackle box and radio frequency scanner.

Colorado Department of Labor records reported $990.64 in wages for Baca in 2001 and nothing thereafter. The State's records further show $892.43 in wages for Saindon in 2003, and approximately $10,000 in combined wages for the years 2000-2002. Both Baca and Saindon admitted to law enforcement officers that they were unemployed at the time of the seizures.

The Government alleges that Claimant has "an extensive criminal history dating back to 1998," including convictions for marijuana possession, smuggling contraband into prison, "dangerous drugs," and possession with intent to distribute. (Verified Compl., ¶11)

II.

Claimant moves the court for entry of summary judgment in his favor on the Verified Complaint for Forfeiture In Rem.

Summary judgment is appropriate under Fed.R.Civ.P. 56(c) when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When applying this standard, the court reviews the pleadings and documentary evidence in the light most favorable to the non moving party. *Gray v. Phillips Petroleum*, 858 F.2d 610, 613 (10th Cir. 1988). "[S]ummary judgment will not lie if the dispute about

4

a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

III.

Claimant argues that the United States has not shown probable cause for the forfeiture because the Government's evidence does not demonstrate a substantial connection between the defendant currency and the criminal activity.

The government's burden in this civil forfeiture action is set forth in the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. §983.   Prior to the enactment of CAFRA, the Government was required to demonstrate probable cause establishing a nexus between the seized property and illegal drug activity. *See U.S. v. Wagoner County Real Estate*, 278 F.3d 1091, 1097 (10th Cir. 2002).   Once the Government demonstrated probable cause, the burden shifted to the claimant to prove by a preponderance of the evidence that the factual predicates for forfeiture were not met. *Id.*   CAFRA changed the burden of proof and requires the Government to establish, by a preponderance of the evidence, that the defendant property is subject to forfeiture.  18 U.S.C. §983(c)(1).  If the Government claims that the defendant property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government must show a substantial connection between the property and the offense. 18 U.S.C. §983(c)(3).

Claimant Baca avers in support of his motion for summary judgment that he is the owner of the defendant currency, that the defendant currency was not involved in any drug

5

transactions and was not intended to facilitate a drug transaction, and that Baca acquired the currency legally, through loan payments he received from Mesa State College and through the sale of a Ford Explorer, for which he received cash. (Affidavit of Claudio Baca, attached to Motion for Summary Judgment ("MSJ"), and attached documentation).

The United States relies primarily on the facts contained in its Verified Complaint in support of its argument that Baca has failed to show that he is entitled to judgment in his favor as a matter of law.

A verified complaint may be treated as an affidavit for purposes of summary judgment if the affidavit satisfies the requirements of Fed.R.Civ.P. 56(e). *See Lantex, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1019 (10th Cir. 2002) (citing *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988)). Rule 56(e) provides that an affidavit "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e).

The Verified Complaint satisfies the requirements of Rule 56(e). Drug Enforcement Administration ("DEA") Agent Nicola Gesi avers that the facts alleged in the Verified Complaint are true to the best of his knowledge and are personally known to him or are contained in numerous police reports that are admissible at trial. Agent Gesi is competent to testify facts within his personal knowledge as a result of his own investigation and observations. In addition, the United States has submitted the police reports upon which many of the facts alleged in the Verified Complaint are based. (*See* Exhibits attached to Response)

The United States also proffers evidence that Joe Vallejos's wife and Henrietta Saindon have claimed ownership of some of the defendant currency.  (Government's Response, Exs. 2, 8)  The record further contains evidence that the person to whom Baca sold the Ford Explorer did not register his title until March 4, 2004, more than six months after the defendant currency was seized.  (Deposition of Claudio Baca, Ex. 5, attached to Response in Opposition) In addition, the record shows that although Baca did receive $13,816.65 in loan payments from Mesa State College, he received the payments over a three-year period, ending almost six months prior to the seizure of the defendant currency. (Baca Deposition, Ex. 8)

Accordingly, I recommend finding that material factual issues remain about whether the defendant currency belongs to Baca, and whether the currency was, or was intended to be, involved in illegal drug trafficking activity.

Baca also argues that the United States cannot show a substantial connection between the defendant currency and illegal drug trafficking activity because: Baca was not charged with a drug offense relating to the events which resulted in the forfeiture of the defendant currency; evidence of the police dogs' positive alerts to the currency is of minimal value because such evidence is unreliable; the Government cannot prove that Baca resided in a "high drug area"; and, Baca's possession of a large sum of money is not indicative of involvement in a drug transaction, absent other evidence linking the money to drug trafficking. I address each of Applicant's legal arguments in turn.

First, the Government need not prove that the defendant currency was involved in a specific drug transaction to satisfy the requirements of 21 U.S.C. §881(a)(6).  *See United*

*States (DEA) v. One 1987 Jeep Wrangler . . .*, 972 F.2d 472, 476 (2d Cir. 1992) (holding, under former probable cause standard, that Government need not connect the defendant property to a particular drug transaction)(internal citation omitted); *United States v. Carrell*, 252 F.3d 1193, 1200 (11th Cir. 2001)(same).  The court has found previously that the facts stated in the Verified Complaint are sufficient to connect the defendant currency to drug trafficking generally. *See* June 17, 2005 Recommendation of United States Magistrate Judge; July 7, 2005 Order on the June 17, 2005 Recommendation.  Moreover, Baca admits that he has a prior misdemeanor conviction for marijuana possession.  (MSJ, at 3)

Second, the cases upon which Baca relies to attack the probative value of dog alerts relied on expert testimony that much of United States currency is tainted with trace amounts of drugs.  *See* cases cited in MSJ, at 4-5.  More recent cases hold that dog alerts are probative of the recent presence of illegal drugs, based on  scientific evidence that drug canines alert to the chemicals given off by the drugs, which chemicals are a volatile byproduct that dissipates rapidly, and, therefore, the dogs only alert when an item has been exposed to large amounts of illegal drugs in the recent past.  *See United States v. Funds in the amount of Thirty Six Thousand Six-Hundred Seventy Dollars*, 403 F.3d 448, 455-460 (7th Cir. 2005); *United States v. $22,474.00 in U.S. Currency*, 246 F.3d 1212, 1216 (9th Cir.2001); *see, also, United States v. $141,770.00 in U.S. Currency*, 157 F.3d 600, 605 (8th Cir. 1998)(concluding that drug dog's alert to the seized money was circumstance supporting government's contention that currency at issue was substantially connected to illegal drugs; excluding testimony of expert who believed that 99 per cent of United States currency was contaminated with some amount of drug residue).

8

I need not address Baca's third argument because the United States does not allege, in support of its forfeiture complaint, that Baca lives in a "high crime area."

Finally, possession of a large amount of cash is indicative that the defendant currency is connected with drug activity. *See $84,615 in U.S. Currency*, 379 F.3d at 501-02; *Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d at 467; *United States v. One Lot of U.S. Currency ($36,634)*, 103 F.3d 1048, 1055 (1st Cir.1997)); *United States v. $215,300*, 882 F.2d 417, 419 (9th Cir.1989); *U.S. v. $67,220.00 in U.S. Currency,* 957 F.2d 280, 285 (6th Cir. 1992). The Government does not rely solely on Baca's asserted ownership of the defendant currency to establish that the currency is subject to forfeiture, however. The United States also relies on Baca's activities before, during and after the seizures, Baca's criminal history, canine alerts indicating the presence of illegal controlled substances on two caches of the defendant currency, evidence that Baca had little or no other legitimate income to substantiate possession of those monies, and evidence disputing Baca's claim that he obtained the currency through legal means.

IV.

For the reasons set forth above, it is

**RECOMMENDED** that Claimant Claudio Baca's "Motion for Summary Judgement or in Alternative Show Cause for Judgement" [Doc. #61] [filed October 17, 2005] be **DENIED** because the United States has submitted evidence from which the finder-of-fact could return a verdict in favor of the Government on its forfeiture claim.

9

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation with the Clerk of the United States District Court for the District of Colorado.  The district judge shall make a de novo determination of those portions of the proposed findings or specified recommendation to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.**

**Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of de novo review of the recommendation by the district judge and may also waive the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.**

Dated April 3, 2006.

BY THE COURT:

s/ Patricia A. Coan
PATRICIA A. COAN
United States Magistrate Judge